IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TROY D. ATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV318 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Troy Atkins ("Plaintiff") brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying his claims for Disability Insurance Benefits and Supplemental Security Income under,

respectively, Titles II and XVI of the Act.  The parties have filed cross-motions for judgment,

and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits on May 29, 2013, alleging a disability onset date of

November 2, 2011 in both applications.  (Tr. at 12, 335-47.)[1]  He later amended his alleged

onset date to September 29, 2012.  (Tr. at 12.)  Plaintiff's applications were denied initially (Tr.

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

at 96-129, 180-97) and upon reconsideration (Tr. at 130-170, 206-25). Thereafter, he requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 227-28.) Plaintiff, along with his non-attorney representative and an impartial vocational expert, attended the subsequent hearing on November 10, 2015. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his amended alleged onset date through January 11, 2016, the date of the administrative decision. (Tr. at 28-29.) On February 6, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-3.)

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments."  Hines, 453 F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date.  Plaintiff therefore met his burden at step one of the sequential evaluation process.  (Tr. at 14.)  At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

bilateral rotator cuff tears, bipolar disorder, depression, and anxiety.

(Tr. at 15.)  The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled a disability listing.  (Tr. at 16.)  The ALJ then assessed Plaintiff's RFC and determined that he could perform light work, but required the following nonexertional limitations:

He can frequently balance, climb ramps or stairs, stoop, crouch[,] and kneel. [Plaintiff] can occasionally reach overhead with the bilateral upper extremities. He is limited to simple routine tasks.

(Tr. at 18.)  Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of his past relevant work.  (Tr. at 27.)  However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy.  (Tr. at 28.)  Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. at 28-29.)

Plaintiff, citing the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), now raises three challenges to the ALJ's mental RFC assessment.  Specifically, he contends that the RFC fails to account for Plaintiff's (1) moderate limitations in concentration, persistence, and pace, (2) mild limitations in social functioning, and (3) mild limitations in activities of daily living.  In terms of physical limitations, Plaintiff also argues that the RFC fails to account for Plaintiff's use of a cane.

A.    RFC Determination

1.    Concentration, persistence, and pace

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace.  In Mascio, the Fourth Circuit explained that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work.  The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted).  This is because "the ability to perform simple tasks differs from the ability to stay on task.  Only the

6

latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In the present case, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 17.) Later in the sequential

analysis, the ALJ formulated a mental RFC limiting Plaintiff to simple routine tasks. (Tr. at 18.) The issue, therefore, is whether the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why Plaintiff's moderate limitation at step three did not translate into any additional RFC limitations. See, e.g., Jones, 2015 WL 5056784, at *3-4; Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *5-6 (W.D.N.C. Aug. 25, 2015); Walker v. Colvin, No. 6:14-cv-00025, 2015 WL 5138281, at *11 (W.D. Va. Aug. 31, 2015).

In finding moderate limitations in concentration, persistence, or pace at step three of the sequential analysis, the ALJ cited the finding of Dr. Anthony Smith, a consultative psychologist, that Plaintiff's "memory for recent and remote events was poor." (Tr. at 17) (citing Tr. at 477). The ALJ also noted that Plaintiff uses "narcotic pain medications, which he testified affected his ability to maintain attention and concentration." (Tr. at 17.) However, in setting the RFC, the ALJ discussed Plaintiff's mental health treatment records at length, and noted that while Plaintiff "previously had significant difficulties with alcohol abuse, this has been in remission for several years" and "[h]is symptoms of depression and anxiety have responded well to medication management as well as outpatient therapy." (Tr. at 24, 22, 677, 680, 683, 686, 689, 692, 695, 698.) In addition, the ALJ relied on the determinations of the State agency psychological consultants Jonathan Mayhew and Arne Newman, noting that "neither Dr. Mayhew nor Dr. Newman found more than moderate limitations for any specific mental ability and both concluded that [Plaintiff] could perform simple, routine, repetitive tasks." (Tr. at 26.) Specifically with regard to concentration, persistence, and pace, the ALJ

gave great weight to Dr. Mayhew's determination that Plaintiff had moderate limitations in concentration, persistence, or pace, but could still perform simple routine tasks. (Tr. at 26.)[4]

In Mascio, the Fourth Circuit explained that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir.2013).) However, in this case, the ALJ acknowledged the minor discrepancies between the two State agency psychological assessments, and specified the weight given to the various assessments and the reasons for that determination, ultimately relying on Plaintiff's treatment records and the opinion of Dr. Mayhew. (Tr. at 26.) Thus, sufficient explanation is provided to allow for meaningful judicial review, and the ALJ's determination is supported by substantial evidence.

2. Social Functioning and Activities of Daily Living

Plaintiff also contends under Mascio that his mild limitations in social functioning and mild limitations in activities of daily living were not adequately reflected in the RFC. However, these contentions are equally unpersuasive.

> With regard to the mild limitations in activities of daily living and social functioning, some district courts within the Fourth Circuit have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of those mild limitations or justify the omission of such restrictions. See, e.g., Ashcraft v. Colvin, No. 3:13CV00417RLVDCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is

---

[4] The ALJ gave only little weight to Dr. Mayhew's statement that Plaintiff had moderate limitations in responding to workplace changes and should be in a "low-stress" setting. The ALJ relied on the consultative examination and Plaintiff's treatment records reflecting that he was responding well to medications, with generally normal mental status examinations. (Tr. at 26.) Plaintiff does not challenge that determination.

unexplained in the analysis surrounding the ALJ's RFC determination, remand is required." (emphasis added)); <u>Reinhardt v. Colvin</u>, No. 3:14–CV–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when [the] plaintiff's RFC for work is considered.").

<u>Adams v. Colvin</u>, No. 1:15CV00673, 2016 WL 4007608, at *7 (M.D.N.C. July 26, 2016). However, "[a]ssuming that <u>Mascio</u> applies even in the context of mild limitations in the broad areas of functioning (i.e., the lowest of four levels above 'none'), the ALJ here sufficiently explained why Plaintiff's mild limitations in daily activities and social functioning did not translate into further restrictions in the RFC." <u>Id.</u> at *7.

In the present case, with respect to social functioning, the ALJ found at step three that Plaintiff had mild difficulties in social functioning, noting the report from consultative psychological examiner Dr. Smith that Plaintiff "did not report being involved in any social activities or organizations." (Tr. at 17.) However, the ALJ noted that Dr. Smith nevertheless concluded that Plaintiff was "able to interact with peers and coworkers, and to respond appropriately to supervision." (Tr. at 17, 478.) In determining the RFC, the ALJ gave great weight to Dr. Smith's opinion concerning Plaintiff's "ability to interact with others and respond to supervision." (Tr. at 25.) The ALJ found that this opinion was "consistent with the record as a whole, including notes from treating sources." (Tr. at 25.) In addition, the ALJ gave little weight to the State agency consultants to the extent they found moderate limitations in Plaintiff's social functioning. In making this determination, the ALJ relied on Dr. Smith's evaluation and on Plaintiff's treatment records showing him responding well to

medication and with generally normal mental status examinations.[5] Finally, to the extent a prior ALJ decision had included limitations to no more than frequent interaction with supervisors and co-workers, and only occasional interaction with the public, the ALJ specifically considered that prior decision but found that the current record did not support such a limitation because since the time of that decision, Plaintiff "has abstained from alcohol and [h]as responded well to mental health treatment." (Tr. at 27.) This discussion provides a sufficient explanation for the omission of any specific social limitations from the RFC.

With respect to Plaintiff's activities of daily living, at step three the ALJ found mild restrictions. However, the ALJ found that Plaintiff "is able to feed and dress himself, and care for basic hygiene. He can fix simple meals and do some household chores. The evidence indicates that he can shop for groceries once a week and handle money." (Tr. at 17.) To the extent Plaintiff now contends that the RFC failed to account for this step three determination, the Court notes that Plaintiff has failed to point to any other functional limitations in connection with his mild limitations in activities of daily living. Moreover, in setting the RFC, the ALJ did address Plaintiff's mild limitations in activities of daily living. Specifically, the ALJ gave great weight to State agency consultant Dr. Mayhew's opinion that Plaintiff had mild restrictions in activities of daily living but could still perform simple routine tasks. (Tr. at 26.) The ALJ specifically relied on this determinations in setting the RFC. Again, this discussion provides a sufficient explanation for the omission of any other limitations from the RFC related to activities of daily living.

---

[5] The ALJ also noted that even with a finding of moderate limitations, the State agency consultants still concluded that Plaintiff could perform full time work involving simple routine tasks. (Tr. at 26.)

B.    Cane Use

Finally, Plaintiff challenges the RFC's failure to account for Plaintiff's use of a cane. "The requirement to use a hand-held assistive device may . . . impact [a claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling."  20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4).  Accordingly, an ALJ must consider the impact of a "medically required" hand-held assistive device on a claimant's RFC.  See McLaughlin v. Colvin, No. 1:12CV621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014); Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II And XVI: Determining Capability To Do Other Work—Implications Of A Residual Function Capacity For Less Than A Full Range Of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-9p").

Social Security Ruling 96-9p explains the impact of an assistive device on an RFC for sedentary work, and courts within this circuit have applied this ruling "to the light occupational base as well, since it involves even greater lifting than sedentary work. . . .  Additionally, a plaintiff always bears the burden of proving her RFC, and therefore the standards in SSR 96-9p can be useful in determining if a plaintiff met that burden."  Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013).  Notably, SSR 96-9p provides the following guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation,

walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7. In short, "even if a cane is prescribed, it does not necessarily follow that it is medically required." Wimbush v. Astrue, No. 4:10CV36, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011).

In the present case, the ALJ noted that Plaintiff told the consultative examiner that "he used a cane occasionally." (Tr. at 15, 468.) The ALJ further noted that at the hearing, Plaintiff "presented with a cane that he indicated was recommended by his orthopedic providers and that he used this for balance." (Tr. at 19, 53-54.) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Tr. at 19.) Specifically with regard to the ability to ambulate, the ALJ noted that during the consultative examination, Plaintiff "had a steady gait and normal station, with 5/5 muscle strength. He could sit, stand, squat, and ambulate and was not considered to require an assistive device. His ability to sit, stand, and move about were considered unimpaired." (Tr. at 15, 469-70.) The ALJ gave great weight to this opinion. (Tr. at 25.) The ALJ also noted that an MRI of Plaintiff's lumbar spine was "negative for any significant disc bulge or stenosis and showed only mild degenerative disc disease." (Tr. at 15-16, 23.) In addition, the ALJ noted that an examination by Plaintiff's treating physician Dr. Gilmer on August 31, 2015, reflected that Plaintiff was "walking with a good pace, and no limp. He had good balance, and could heel and toe walk for short distances." (Tr. at 21.) This evidence reflects Plaintiff's ability to walk and balance, and the ALJ considered this evidence and in addition gave great weight to the consultative examiner's opinion, which included the conclusion that Plaintiff did not require an assistive device. (Tr. at 25, 15, 470.)

Plaintiff contends that the ALJ should have specifically discussed a recommendation by his Physician Assistant, Patrick Cacchio, for use of a cane. In this regard, the records reflect that on August 6, 2014, PA Cacchio noted that:

> Surgical intervention is not indicated and is unlikely to be beneficial for his pain. He is interested in formal pain management and a referral was made today for that purpose. . . . Given his right leg weakness, I did suggest that he consider use of a cane for stability when ambulating long distances. He informed me today that he had a cane at home and will use it in the future.

(Tr. at 638.) This record does not reflect formal prescription for or requirement of a cane. Subsequent medical records reflect that Plaintiff carried a cane at appointments in December 2014 and January 2015 (Tr. at 626, 628, 721), but records before and after do not reflect use of a cane (Tr. at 631-32, 633-34, 635-36, 640, 703-04, 705-07, 708-09, 710-11, 712-14, 716-17, 718-19).[6] In addition, as noted above, the ALJ specifically set out the subsequent treatment note by Dr. Gilmer from August 2015, noting good balance and ability to walk at a good pace with no limp (Tr. at 21, 705-07), as well as the earlier conclusion of the consultative examiner that no assistive device was required (Tr. at 15, 25). The ALJ thus built an accurate and logical bridge from the evidence to the RFC determination, that determination is supported by substantial evidence, and there is no basis for reversal with respect to Plaintiff's contention that the ALJ did not adequately consider his use of a cane.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the

---

[6] The Court also notes that the ALJ gave little weight to the work status opinion evidence provided by PA Cacchio, noting that he was "not an acceptable medical source for establishing the presence of an impairment," and further noting that his opinions were not consistent with other evidence, including the consultative examination and the imaging studies showing that Plaintiff's lumbar degeneration was only mild in nature. (Tr. at 24.)

Commissioner [Doc. #9] be DENIED, that Defendant's for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 30th day of August, 2018.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge